494 A.2d 443

Ronald C. BARNHART, Appellant,

v.

Alma P. BARNHART.

Ronald C. BARNHART

v.

Alma P. BARNHART, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 19, 1984.

Filed June 7, 1985.

Jordan D. Cunningham, Harrisburg, for appellant (at No. 166) for appellee (at No. 180).

Theodore B. Smith, III, Carlisle, for appellant (at No. 180) for appellee (at No. 116).

Before WICKERSHAM, WIEAND and HESTER, JJ.

WICKERSHAM, Judge:

This appeal and cross-appeal result from an order of the Court of Common Pleas of Cumberland County divorcing the parties, distributing their property, and granting alimony to wife.

Ronald Barnhart [hereinafter "husband"] and Alma Barnhart [hereinafter "wife"] were married on February 16, 1960 and were separated on June 26, 1979, when husband left the marital home. On April 28, 1981, husband filed a divorce complaint, in which he requested the equitable distribution of their property. On May 7, 1981, wife filed an answer and counterclaim seeking alimony pendente lite,

counsel fees, costs and expenses, and alimony. Following a hearing on April 23, 1982, the Honorable Harold E. Sheely entered an order in favor of wife for alimony pendente lite and counsel fees. A master's hearing was held on June 9, 1982. The master filed her report on August 9, 1982, to which wife filed exceptions. Following argument before the court *en banc*, the Honorable George E. Hoffer issued an order and opinion partially granting and partially denying wife's exceptions. Husband now appeals from that order and wife cross-appeals.[1] Husband questions the grant of alimony to wife; wife questions the court's failure to include husband's pension as marital property; and both parties question the division of the marital home. Neither party disputes the granting of the divorce itself.

First, both parties, for different reasons, are unhappy with the lower court's equitable distribution of the marital home. The master and the lower court both found that, by an oral agreement at the time of separation, husband agreed to relinquish his rights and interest in the marital residence in return for his wife's promise never to proceed against him for support.[2] In accordance with this agreement, husband conveyed his interest in the home by deed in July 1979, and wife withdrew her pending claim for support shortly thereafter. When making this agreement, the parties did not speak directly to each other, but used an intermediary, Claire Swauger, wife's son from a previous marriage, who testified to the circumstances of the agreement.

1. The original opinion and order from which the parties appealed was issued on December 29, 1982. On January 4, 1983, the lower court entered an order vacating the order of December 29, 1982, because husband had not complied with an April 28, 1981 order directing payment of counsel fees before any final decree could be entered. Apparently, husband then paid the counsel fees because on April 15, 1983, Judge Hoffer issued another order, reinstating the order of December 29, 1982.

2. Husband also agreed to convey and did in fact convey to wife a 1975 automobile. This conveyance has not been contested by either party in these appeals.

■ The lower court found that the property distribution agreement between the parties in July or August 1979 was well supported by the evidence. Wife had little choice but to accept the home and she lost nothing by her promise not to proceed with a support action against her unemployed husband. The master recommended that the transfer of marital assets pursuant to the separation agreement be approved by the court as an equitable distribution of marital property. The court disagreed, however. In September 1980, husband returned to work and because wife was experiencing serious financial difficulties, she began a new support action in October 1980, which eventually resulted in a bi-weekly support order being entered against husband. The lower court found that by successfully prosecuting a support action, wife abrogated the distribution agreement. As a result, the marital home returned to the status of marital property, which the court then distributed to the parties as tenants in common, with exclusive possession in wife for as long as she shall live there. If wife decides to sell the home, the proceeds are to be divided equally between the parties.

> In determining the propriety of property distribution and of alimony, we use the abuse of discretion standard of review. *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983); *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983). Under this standard, we do not usurp the hearing court's duty as fact finder. Rather we apply the legislative guidelines of the Divorce Code to the record to determine whether or not the hearing court has abused its discretion.

*Semasek v. Semasek,* 331 Pa.Super. 1, 6, 479 A.2d 1047, 1050 (1984).

After careful consideration, we are not persuaded by wife's arguments (1) that the conveyance of the home to her by husband was not the result of an agreement, but was a gift, and thus not marital property subject to distribution, or (2) that wife should have received the *entire* home as a result of equitable distribution. Neither are we persuaded

by husband's argument that the separation agreement should be specifically enforced, despite wife's breach of that agreement. We suspect husband's desire to have us declare the home non-marital property and thus not subject to equitable distribution relates more to his desire to avoid alimony than a true disinterest in owning half of the home. The lower court clearly examined the factors under section 401(d) of the Divorce Code, and we see no abuse of discretion in his distribution of what he determined to be the parties' sole asset—the marital home.

Second, husband questions the grant of alimony to wife, claiming that the court abused its discretion by not considering whether there was an actual need for it. The master found that wife possessed sufficient property to provide for her reasonable needs, based upon the master's recommendation that wife retain complete and sole ownership of the home, and thus denied alimony. In contrast, the lower court, in distributing the home as marital property rather than as separate property, held that wife lacked sufficient property to provide for her reasonable needs and because of her physical infirmities, was unable to support herself through appropriate employment. Thus, the court felt that an award of alimony was appropriate.

The record discloses that wife is 50 years old and husband is 49 years old. Wife is totally disabled as a result of three strokes. The resulting serious physical disabilities discount the possibility of future employment. She receives a social security disability pension of $318.00 per month. She receives an additional $160.00 per month in food stamps because the parties' 19 year old son, his wife, and baby also reside in the marital home. Her expenses amount to approximately $568.00 per month. Husband is in good health and earns $24,000.00 per year as a government employee. His net pay is approximately $607.00 per week, including a 7% deduction for retirement benefits. His income safely exceeds his expenses, which he shares with his employed girlfriend. Husband left wife to cohabit with this long-time girlfriend. Wife's only asset is half of the marital home

with the accompanying debt of the mortgage. Husband is virtually debt-free. Considering the above in light of section 501 of the Code, we cannot say that the lower court abused its discretion in awarding $90.00 per week alimony to wife.

■ Finally, wife complains that the lower court erred in finding that husband's pension, acquired during marriage and prior to separation, was not marital property subject to equitable distribution. We find her position to have merit.

Section 401(e) of the Divorce Code, 23 P.S. § 401(e), defines marital property as "all property acquired by either party during the marriage," and before separation. There are a number of statutory exceptions, but a pension is not one of them. Husband does not question that during the marriage and prior to separation, approximately $12,000.00 in vested pension funds accrued. He does not even contest that such pension funds accrued during the marriage are subject to equitable distribution. *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984); *Willkow v. Willkow,* 26 Pa.D. & C.3d 74 (1983); *Sorbello v. Sorbello,* 21 Pa.D. & C.3d 187 (1981). His position is that because the pension no longer existed at the time the divorce complaint was filed, it could not be distributed as part of an order of equitable distribution. Husband left wife in June 1979, at which time he quit his job with Sperry-Univac, withdrew his $12,000.00 pension, and used the money to pay some debts and his expenses from June 1979 until September 1980, when he again became employed. His divorce complaint was filed in April 1981.

While both the master and the lower court excluded the pension from marital property since it was no longer in existence, we find that this exclusion is in direct conflict with the equitable distribution sections of the Divorce Code. Such a rule would completely nullify the protection of the marital property distribution provisions of the Code since it would mean that any property acquired during marriage and subject to equitable distribution could be removed from such distribution by a spouse merely consuming it after

separation and before the divorce. We cannot allow a spouse to so easily defeat the purpose and spirit of equitable distribution.

Thus we find that the lower court erred in failing to include the value of husband's pension as an element of marital property. It is therefore necessary for us to remand to enable the lower court to determine the proper distribution of the pension under section 401(d) of the Code. We recognize that this additional element may very well result in a reevaluation of the other economic issues herein.

Affirmed in part and reversed in part. This case is remanded for proceedings not inconsistent with this opinion. Jurisdiction is relinquished.

WIEAND, J., files a concurring opinion.

WIEAND, Judge, concurring:

I agree with the majority that the trial court did not abuse its discretion by making an award of alimony or by including the marital home for purposes of effecting equitable distribution of marital assets. I am also agreed that the case may be remanded to permit the trial court to consider whether the husband's pension was marital property. I disagree, however, with the majority's conclusion that the trial court must find the pension to be marital property.

When Ronald Barnhart terminated his employment with Sperry-Univac in June, 1979, he withdrew his pension, which then had an approximate value of $12,000.00. He used some of this money to pay an encumbrance on a Dodge automobile which, pursuant to agreement, he then transferred to his wife. She traded the Dodge for another car, which was subsequently repossessed. The balance of the pension fund was used by Barnhart to support himself until he obtained other employment in September, 1980. This action in divorce was not commenced until April 28, 1981. The trial court held that the proceeds of the pension had been expended and were no longer in existence at the time of the divorce action. Therefore, the court held, they did

not constitute marital property. The majority holds that the trial court erred and that the pension proceeds were marital property for purposes of equitable distribution. I would hold that the record is inadequate to permit such a determination.

Section 401(e) of the Divorce Code of April 2, 1980, P.L. 63, 23 P.S. § 401(e), provides as follows:

For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

. . . .

(5) Property which a party has sold, granted, conveyed, or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.

It is clear that the proceeds of Barnhart's pension were disposed of prior to commencement of the present divorce action. Whether this money is nevertheless to be deemed marital property must be determined, therefore, according to whether "disposition" was made "in good faith" and "for value."

The majority's concern that a spouse not be permitted unilaterally to remove property from availability for equitable distribution by consuming the property after separation and before divorce is alleviated by the requirements of "good faith" and "for value." Without proof that the property was disposed of in good faith and for value, the property is subject to equitable distribution. The purposes and spirit of equitable distribution are more nearly preserved by applying and following this clear mandate of section 401(e)(5).

The trial court made no findings other than that the pension proceeds were not in existence. The sum of $1,300.00, according to the testimony, had been used to pay an encumbrance on a motor vehicle, and the vehicle had then been transferred to appellee. On the surface, at least, this disposition would seem to have been "in good faith" and "for value." The indication is that the balance of the pension fund was used by Barnhart to support himself until

242

he obtained new employment with the United States Government in September, 1980. Assuming, without deciding, that the balance of this money was disposed of for value, there remains to be determined whether disposition was accomplished in good faith.

Upon remand, I would direct the trial court to take testimony and make findings as to whether the proceeds of Ronald Barnhart's pension fund were disposed of "for value" and "in good faith." To the extent that they were disposed of for value and in good faith, those moneys are not to be deemed marital property for purposes of effecting equitable distribution. If any portion thereof was not disposed of for value and in good faith, however, that portion must be deemed marital property and is subject to equitable distribution.