J-A13023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMY WALLACE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKIE P. WALLACE AND DAVID | : | |
| DURKOVIC AND DONNA DURKOVIC | : | |
| | : | No. 1432 EDA 2021 |
| | : | |
| APPEAL OF: RICKIE P. WALLACE | : | |

Appeal from the Order Entered June 18, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2014-30077

BEFORE:  OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 11, 2022**

Rickie P. Wallace ("Husband") appeals from the June 18, 2021 Order entered in the Wayne County Court of Common Pleas that, upon remand from this Court, found, *inter alia*, that Amy Wallace ("Wife") did not dissipate marital property.  Upon review, we affirm.

The relevant factual and procedural history is as follows.  Husband and Wife married in 1993.  During the marriage, the parties jointly owned Wallace Tractor and Equipment, Inc. ("Wallace Tractor"), which sold and serviced tractors and construction equipment, and was operated on land owned by Wife's parents (collectively, "the Durkovics"), who are joined in this case as indispensable parties.  The Durkovics also operated a self-storage business on the property named Mt. Cobb Self-Storage.  During the marriage, Wife assumed responsibility for managing her parent's storage business and

incorporated a new entity, Double DW, to collect rental fees from storage customers. Wife was the only corporate officer listed in the articles of incorporation and the collected rental fees amounted to approximately $5,700 per month. On or around January 1, 2010, the Durkovics entered into a lease purchase agreement with Double DW. Under the agreement, the Durkovics leased the property where Wallace Tractor and the storage business were located to Double DW. In return, Double DW agreed to pay the Durkovics $3,794.75 per month for 20 years, plus taxes and insurance on the property. At the end of the lease period, Double DW would own the property. The lease purchase agreement contained confession of judgment provisions and specifically provided that all payments would be retained by the property owners, *i.e.*, the Durkovics, if Double DW did not purchase the property in accordance with the terms of the agreement, including if Double DW defaulted on monthly payments.

From 2010 to 2015, Double DW complied with monthly payments. During this time, however, Wallace Tractor began to have poor financial performance, and Double DW loaned money to Wallace Tractor to keep it afloat. Wife filed for divorce in February 2014. Husband relocated to Florida for several months in 2015 and left Wife to deal with the businesses, which were continuing to have financial issues. In January 2016, Double DW ceased making monthly payments on the lease purchase agreement. On March 28, 2016, Wife entered into a termination of the lease purchase agreement with the Durkovics.

Husband and Wife were divorced on October 13, 2018, and the equitable distribution order determined that Husband did not have an interest in Double DW and, therefore, it was not marital property. On appeal, this Court concluded that Double DW was, in fact, marital property, and remanded for the trial court to determine whether Wife dissipated Husband's interest in Double DW and what effect, if any, such finding has on the equitable distribution of the marital estate. Upon remand, the trial court found that Wife did not dissipate marital property, added Double DW back into the marital estate for equitable distribution, and ordered Husband to receive $8,395.30 in rental payments received by Double DW after Wife and the Durkovics terminated the lease purchase agreement.

Husband timely appealed. Husband filed a Pa.R.A.P 1925(b) statement. The trial court relied on its June 18, 2021 Opinion and Order in lieu of a Rule 1925(a) opinion.

Husband raises a sole issue for our review:

Whether the trial court abused its discretion and/or erred, as a matter of law, in determining that Wife did not dissipate a marital asset when she unilaterally terminated the Lease Purchase Agreement held by Double DW without Appellant's knowledge or consent, thereby allowing valuable real estate and a profitable business to be returned to her parents without consideration or it being factored in for purposes of equitable distribution?

Husband's Br. at 2.

It is well established that our standard of review for a challenge to an equitable distribution order is limited, and this Court will not reverse an award of equitable distribution absent an abuse of discretion. *Lee v. Lee*, 978 A.2d

- 3 -

380, 382 (Pa. Super. 2009). "In addition, when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate economic justice[.]" *Id.* (citation omitted). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence" that the trial court misapplied the law or failed to follow proper legal procedure. *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (citation omitted). In addition, "the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below." *Lee*, 978 A.2d at 382 (citation omitted).

In fashioning an equitable distribution award, the trial court is required to consider, at the very least, the enumerated factors set forth in 23 Pa.C.S. § 3502(a)(1)-(11). *Wang v. Feng*, 888 A.2d 882, 888 (Pa. Super. 2005). However, this court has noted that, "[t]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case." *Id.* (citations omitted). "The list of factors [enumerated in Section 3502(a)] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions." *Id.* (citations omitted). "The trial court has the authority to divide the award as the equities presented in the particular case may require." *Childress v. Bogosian*, 12 A.3d 448, 462 (Pa. Super. 2011) (citation omitted). This Court "do[es] not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do

we find a basis for reversal in the court's application of a single factor." ***Id.*** (citations omitted). Rather, it is well-settled that we "must consider the distribution scheme as a whole." ***Biese v. Biese***, 979 A.2d 892, 895 (Pa. Super. 2009) (citation omitted). "We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Id.*** (citation omitted).

Relevant to this case, the Divorce Code states that "the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors," including:

> (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

23 Pa.C.S. § 3502(a)(7).

Instantly, Husband avers that the trial court abused its discretion when it found that Wife did not dissipate the marital asset Double DW. Husband's Br. at 9. Husband argues that the trial court should have considered that Wife terminated the lease purchase agreement without his knowledge or consent, thereby depriving Husband of a substantial economic benefit in the form of valuable real estate, a profitable business, and loss of the $272,222 that the couple had previously paid in principal and interest towards the lease purchase agreement. ***Id.*** at 8. Husband asserts that those assets should have been included in the equitable distribution scheme but, instead, Wife returned those

assets to her parents, the Durkovics. *Id.* at 9. Essentially, Husband conflates the value of the Double DW asset with the value of the real property that was the subject of the lease purchase agreement and argues that Wife dissipated marital assets when Double DW ceased payments on the lease purchase agreement.

Here, the trial court credited Wife's testimony that Wallace Tractor had severe financial difficulties between 2015 and 2016 and that she attempted to preserve the Double DW asset while also attempting to preserve Wallace Tractor, another marital asset, by comingling funds and making monetary advances to Wallace Tractor until both were no longer financially solvent. The trial court opined:

> This [c]ourt finds that Wife did not dissipate the Double DW asset. Rather, she attempted to preserve the Double DW asset while also attempting to preserve the parties' marital asset of Wallace Tractor []. At the Master's Hearing, Wife testified that instead of having enough money in the Double DW checking account to pay the rent for her lease-purchase agreement, she comingled the funds and made advances into Wallace Tractor's checking account. Further, she testified that, at times, when there was monthly rent [income] in excess of the lease-purchase agreement she utilized those funds to sustain Wallace Tractor. Wife also testified that Wallace Tractor had severe financial difficulties between 2015 and 2016 and Double DW either wrote a check or swiped its debit card into Wallace Tractor's account.

Opinion and Order, dated 6/18/21, at 1-2 (internal citations omitted). In contrast, the trial court found that Husband did not preserve or attempt to preserve either the Double DW or Wallace Tractor asset:

> At no time did Husband preserve or attempt to preserve either Double DW or Wallace Tractor especially when Wallace Tractor

- 6 -

was experiencing financial difficulties. Rather, Husband lived in Florida for a majority of this time. Husband was President of Wallace Tractor and he claimed that he was unaware of the financial situation because Wife's main role was selling and bookkeeping. Husband mainly handled the sales and service and oversight aspect of the business. Also, Husband testified that despite his role as the President of the company, he was not aware of the extent of financial turmoil facing Wallace Tractor.

*Id.* at 2. Our review of the record supports the trial court's findings. We decline to usurp the trial court's credibility determinations or reweigh the evidence. Accordingly, we find no abuse of discretion.

Husband cites *Naddeo v. Naddeo*, 626 A.2d 608 (Pa. Super. 1993), *Barnhart v. Barnhart*, 494 A.2d 443 (Pa. Super. 1985), and *Nagle v. Nagle*, 799 A.2d 812 (Pa. Super. 2002), to support his argument that Wife dissipated a marital asset. However, we remain unpersuaded as these cases are easily distinguished from the instant case.

In *Nadeo*, this Court concluded that a husband dissipated a marital asset when husband voluntarily dissolved his profitable law firm partnership of eighteen years after he separated from his wife and shortly before an equitable distribution hearing. 626 A.2d at 612. In *Barnhart*, this Court determined that the full value of husband's pension was marital property subject to equitable distribution, despite the fact husband withdrew all the funds to pay for living expenses and the pension did not exist at the time the divorce complaint was filed. 494 A.2d at 445-46. In *Nagle*, this court found that a husband dissipated marital funds when he transferred a majority stock

ownership interest in a thriving corporation to his son for no consideration approximately three months after his Wife filed for divorce.  799 A.2d at 814.

Instantly, unlike the spouses in **Nadeo**, **Barnhadt**, and **Nagle**, Wife used funds from Double DW to pay debts incurred by another marital asset, Wallace Tractor, in an attempt preserve both marital assets.  Further, unlike the instant case, none of the cited cases involve the termination of a lease purchase agreement.  Here, the lease purchase agreement contained confession of judgment provisions and specifically provided that all payments would be retained by the property owners if the property was not purchased in accordance with the terms of the agreement.  More than two years after the commencement of this divorce action, Double DW was unable to timely make all required lease-related payments, prompting the Durkovics to terminate the lease purchase agreement and retain the leased property. Husband fails to recognize that the property that was the subject of the lease purchase agreement was never actually owned by Husband and Wife.

In conclusion, the record supports the trial court's finding that Wife did not dissipate marital assets and, on the contrary, attempted to preserve marital assets.  We decline to usurp the trial court's credibility determinations or reweigh the evidence.  Accordingly, we find no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/11/2022</u>